Good morning, Your Honors. May it please the Court. My name is Jeff Simon. I represent Officer William Thompson in this appeal from the District Court's denial of Officer Thompson's Qualified Immunity Summary Judgment Motion arising out of an incident in which Officer Thompson used lethal force against a young man named Ryan Stokes on July 28, 2013. Now, as this Court knows, and as is replete in the jurisprudence, these types of cases need to be evaluated under the FACTS and circumstances presented to the officer at the time he made the decision to use deadly force. There needs to be an objective reasonableness to that decision and it needs to be a clearly established constitutional right that he violated that should have been given him fair notice and warning that the decision to use deadly force was inappropriate. So where the District Court erred here is in two circumstances. The first is the objective and the second is based entirely upon the FACTS and circumstances presented to Officer Thompson at that moment. Now, the entire encounter from when Officer Thompson first observed Mr. Stokes until the time he discharged his weapon occurred in seven to ten seconds. It occurred within a confined space in a dark parking lot at three o'clock in the morning on a Sunday morning. Officer Thompson was patrolling the parking lot when he received a dispatch over his weapon. Let me ask you a question that seems to me to be rather important. If we were to conclude that the District Court's failing in this case was to conduct the same sort of inadequate qualified immunity analysis that the Supreme Court reversed the Ninth Circuit for in Kissela after the District Court's ruling, what would our disposition be? I believe this court is in a position to enter judgment in favor of Officer Thompson. We're supposed to do the qualified immunity analysis firsthand? Well, I think that this court does that all the time, Your Honor, in the cases addressing qualified immunity. Well, not when the error is... We've had a lot of cases where the District Court, not for some time, but early in my years, Judge Holman probably recalls, we had district judges who simply didn't like to do qualified immunity analysis. And so they didn't. And so we set it back saying, not granting qualified immunity, but saying do the analysis. Now why wouldn't that be the proper disposition here? Well, Your Honor, I think the answer to that question is that on the clearly established element, which is a pure question of law for this court, the plaintiff utterly... Yeah, but if the District Court didn't do it, if the District Court did the Ninth Circuit analysis, which is to cite Graham and cite Garner and say, clearly established, no qualified immunity, that's like not doing it at all. I agree, Your Honor. All right, so why aren't we back to the 1990s and saying, go do it? Well, Your Honor, the court is, of course, free to do whatever it chooses, but I believe that... Why wouldn't it be? Well, I don't... because it is... because the the second element of clearly established is so clearly lacking here that... That's why we've got an in-bank this Friday on this very issue? I didn't know that, but I may come in for that, Your Honor. It's a fact... We've got, I think, three or four panel cases, this panel, before that in-bank. Yes, this is, unfortunately, this is an issue that... It's all over the map. Yes. And too often, District judges who simply don't want to do what the Supreme Court has now clarified, the I understand, Your Honor. I understand. Well, and here's the problem, just to add to what Judge Logan said. I don't actually know what's disputed and what's not here. I mean, we don't... This order seems so deficient and, you know, just... You were highlighting the facts. There's some facts that don't help Officer Thompson, but we don't really know what the District Court did, and isn't that kind of inconsistent with our limited authority on an interlocutory appeal for us to go in and supply the facts that the District Court never supplied in the first place? Well, I don't know that it is outside your authority in the Wheelock case that Judge Wallman was on very recently. The District Court actually found that there was a dispute. There was no dispute of fact, but that the pursuing officer could not have seen that the victim dropped the gun before the shooting occurred. This court went in and examined the record and determined that there was a disputed issue of fact that may have been possible for the pursuing officer to see that the victim had dropped the gun before the shooting, and therefore, it was an issue of fact that had to be regarded as disputed. So the cases we've cited have shown many times where this court has been willing to go in and look at those facts. But my guess is that the District Court did an analysis and went through and found what issues were and weren't disputed. I'm not sure we have this here. We have a couple of examples, maybe one or two, I think, in the District Court's order as to what facts might be disputed, but we don't have, we certainly don't have any kind of extensive analysis. I agree with that, Your Honor. There's a listing on page two of sort of facts that are undisputed, and we believe that even just those lists of in the record regarding other key facts about the proximity, about the conduct of Mr. Stokes, how he held his hands, how he moved, how he disregarded commands, how he reengaged. And just to add to that, I mean, for instance, we have no one claims to have seen Mr. Stokes handling the gun, and I understand that he had his hands near his waist. You know, Stokes' friend said the gun belonged to a friend and that was sitting on the, I mean, there's just so many facts that we have no idea how the District Court resolved it. Now, wait a minute, somebody did see the gun. Officer Thompson saw the gun. Well, other than Officer Thompson, I'm saying. Okay, but the burden of the defeat qualified immunity is on the plaintiff. That's correct, Your Honor. So it seems to me that if that fact is not somehow disputed by objectively probative evidence, it's hard for me to see how qualified immunity would be denied. I agree, Your Honor, and I think it is perfectly appropriate for this court to make that observation. Well, I have to find out from opposing counsel what objective evidence there is. There's all kinds of conspiracy theories in the appellee's brief, but I don't understand the objective evidence. Which is precisely. Other than people who weren't in a position to see him running across, not seeing him. You're absolutely correct about that. Officer Thompson was the only one to see him as he approached the car in the close proximity. The only one to see his hands and it was in those hands. Well, if there was a lot of evidence in the prior, the prior ruckus did not include firearms. And that would be objective evidence that was disputing Thompson's testimony that he was carrying a gun when he ran across the parking lot fleeing from the ruckus. The fact that a gun wasn't seen or used in the prior ruckus, I don't think, does tell us whether he had a gun on him or not. Where would he have gotten it? Well, we don't know. Other than the Monte Carlo when he got there. This is one thing that is undisputed and that, in fact, the district court did find. It is undisputed that a gun was found on the seat of the car that Mr. Stokes had just leaned into, retreated from, closed the door, and then began to turn in this direction toward the pursuing officer who was approximately 15 feet away. And his hands were still held like this and could not be seen by Officer Thompson. We know, oh, go ahead. I thought that, what was his name, Otley? Ollie Otley? Didn't he testify that where he kept the gun was not where it was found? It is also undisputed that the gun was in a different location in the vehicle than it had been when Mr. Otley says he put it between the seat and the center council. So here's what we do. Stokes didn't have time to move it around. He was in the car for a very brief period of time. Now, one of two things. He was not carrying the gun to the car. Giving the plaintiff every inference, which I don't think is reasonable because there's no probative evidence of a witness on the scene who does that. But even if you want to give the plaintiff the inference that Mr. Stokes did not have a gun, this case does not turn on whether he had the gun in his hand at that time or not. But what we know is that he went into a vehicle, retreated from a vehicle in contravention of command, turned and moved in the direction of a pursuing officer. The issue is whether he was objectively perceived by Thompson as a threat. That's right, Your Honor. Thompson or the other officer at the time he was shot. That's correct, Your Honor. And he had to have a gun to be a threat. Well, he went into a vehicle and retreated from a vehicle. And in that vehicle, we know for a fact was a gun. Now, when an officer sees a non-compliant fleeing suspect go into a place of concealment like a vehicle, and in a situation where this suspect has directly looked at the officer who has a gun pointed at him in full uniform and is issuing commands, the officer sees that suspect go into a vehicle and come out of the vehicle, turn to re-engage with a pursuing officer and cannot see his hands, I suggest that it is objectively reasonable that that officer at least doesn't know whether he has a gun. But there's some countervailing evidence, too, which is why, again, I get back to the district court's order. One of the pieces of countervailing evidence is I believe there were some officers who said it appeared that Mr. Stokes may have been surrendering at the time he was shot. And that would seem to be relevant here. Your Honor, and it's a very interesting observation. I'm glad you brought it up. That was Officer Straub, who was the pursuing officer. So Officer Thompson is here. Mr. Stokes is moving in this direction. Officer Straub is over there. The key difference is that Officer Straub sees Mr. Stokes from the front. He can see his hands. And what he testifies to is that his hands were beginning to raise as though he were going to surrender. Now, from Officer Thompson's perspective, the defendant in this case, from that point of view, what he sees is a suspect whose hands are hidden beginning to raise his hands. Now, that can mean one of two things. It can mean surrender or it can mean raising a firearm to shoot it at the pursuing officer. But the fact of the same, and I realize there are different views, but the fact that officers viewed the matter very differently, that doesn't create some question of fact for... They viewed the facts of what was going on. Their observations of the individual are consistent. Their point of view was different, which is why in the second or two that Officer Thompson had to make his decision, he saw something very different than when Officer Straub said. They were in completely different locations. One could see the front of Mr. Stokes. The other could not. One could see the hands of Mr. Stokes. The defendant in this case could not see the hands of Mr. Stokes. He'd known he just exited a vehicle. Objectively, reasonable officer might be concerned whether he'd gone there to retrieve a weapon. In fact, a weapon was found. At what point did Thompson know that there was a gun involved? Immediately after the shooting. But before that, he had no inclination whatsoever, intimation that the victim was armed? Officer Thompson's sworn testimony in both declaration and deposition was that when Mr. Stokes passed in front of him to the Monte Carlo, he saw a black handgun in his hand. What about the fact that... Doesn't that defy credulity? That he saw the gun? Your Honor, I would suggest that it doesn't. In fact, I think... What was the distance between the two? Between 10 and 15 feet. About two parking spots' width. Approximately distance for me to Judge Loken or a bit more. He saw a non-existent gun? Officer Thompson was here. He said he saw the gun in Mr. Stokes' right hand. Well, it wasn't non-existent. It was in the car. There was certainly a gun. What we know is that there was a gun in the vehicle. Well, after the fact, sir. We knew a lot of things after the fact. Well, what we know now and what the district court has... What about Officer Straub? He had a clearer view than Officer Thompson. That's right. He saw no gun. Officer Straub was pursuing Mr. Stokes and the really undisputed testimonies that Mr. Stokes had. So Officer Straub during the pursuit was behind Mr. Stokes. And at the time, because of the angle of the building, when Mr. Stokes came around the angle of the building, Officer Straub in pursuit didn't even know that Officer Thompson was there. Officer Thompson was around the corner. In fact, Officer Straub was startled by the gunshot. That's correct. Well, as I understand it, the case for qualified immunity would be Thompson did see a gun as Stokes went by him from right to left, I guess, toward the car. He did not see what happened inside the car momentarily. Correct. And then Stokes did a turnaround, went back towards Straub. Correct. And now Thompson couldn't see his hands. Correct. But the objectively reasonable theory would be he had a reason to believe that the gun he saw on the way to the car was still in his hands on the way coming back from the car. Correct. Which in turn proved not to be true. Correct. The gun was in fact left in the car. Correct. Under this theory. So Thompson saw the gun as Stokes took it to the car. Correct. Yes. And inferred it was still in his hand and being used to threaten Straub. Certainly thought it could be. Certainly thought he did not know whether it was there or not. Was an objectively reasonable threat to at least one, if not both officers. Correct. And his concern was for Officer Straub. And his testimony was in the second or two, he had to make a decision whether to fire his firearm or not. And Garner and other deadly force cases clearly would say that that theory of supported by particularized objectively reasonable facts warrants qualified immunity. So the plaintiff has to defeat or create a jury issue defeating that theory. I agree, Your Honor. I see I'm out of time. Could I ask one more question? But there is a counter argument here, right? Because if you have, I mean, this is why, again, the district court order is not great. Because the counter argument is if the other officer viewed him as surrendering, there's also objective evidence that he never warned him, said, hey, drop the gun or anything like that from other officers, not from him. He said he warned him, but other officers said he did not. So if you have some evidence showing I'm surrendering and you don't say, hey, drop the weapon, that doesn't look good for your client if you believe that evidence. Well, Your Honor, if I might. Officer Jones, who was behind Officer Thompson, did hear verbal warnings given. Officer Straub, who'd been running for two blocks in a foot chase and was on the other side of the parking lot, didn't even know Officer Thompson was there, says he did not hear the commands. That doesn't mean the commands weren't given. There's no one who said the commands were not given. But denied having heard them, right? I mean, there was, yes. That's correct. Officer Straub testified that he did not hear the commands from Officer Thompson. I see I'm out of time if I might reserve a minute on rebuttal. Or if there's any other questions. Okay, thank you. Mr. McAllister. Your Honor, may it please the court. You've hit the nail on the head, not surprising. The dispute is about one thing. This entire interlocutory appeal rests on one fact. Was there, or was there not, a gun? It defies physics, let alone logic, that Officer Thompson could see a gun in the right hand of Mr. Stokes with the barrel pointed down in light of this testimony from the owner of that gun. And this is at page 16 of our brief. Ollie Outley was with Ryan Stokes the entire night, including in the red Monte Carlo car ride down to the Power and Light District. Ollie Outley was the legal owner of the .40 caliber Glock 22 found inside the red Monte Carlo. Ollie Outley placed that gun, barrel down, between the driver's seat and the console. He left it there. Ryan Stokes did not take it from the red Monte Carlo. No one ever went back to the red Monte Carlo to get the gun. And Ryan Stokes never had any gun on him that night. And as to Ollie Outley, he follows the rules when it comes to his handgun. How can the appellant say that Officer Thompson, seeing the gun as Ryan Stokes was coming around the car in his right hand, how is it that he can ignore the testimony of Ollie Outley that says, that gun never left my car? That is a contested fact. Yeah, but then you've got a problem here. I mean, if we focus on the gun, he can get into the car and then the gun is left in the car. In a different place in the car once, you know, once the police later find it. So that, I'm not sure that fact helps you. Well, that's record evidence that's disputed too, Your Honor. You just heard an argument that Ryan Stokes got in the car. He never got in the car. That's a disputed fact. The car door opened and closed within a matter of a second. He never got in the car. Wait, wait, wait, it's a disputed fact. What positive evidence is there refuting that he got in the car? All you need to do is look at Officer Thompson's video deposition. He showed you exactly the movements. He showed everyone in that deposition how the door opened and closed very quickly. And Officer Jones did the same thing. There is disputed evidence in the record that Ryan Stokes did not. Jones was watching? Jones saw everything that Ryan Stokes did, everything. Jones said he didn't get in the car? Correct, correct. Officer Straub says in his video deposition, he saw the door open and close very quickly. And in Officer Straub's, from Officer Straub's perspective, he thought that Ryan Stokes was simply getting in the car. He didn't think there was anything unusual about it. He didn't see Ryan Stokes as a threat. And in fact, when Ryan Stokes was standing in front of Officer Straub, his palms were face up. And he was surrendering. For this purpose, though, and we'll get to the surrendering point in a second. But for this purpose, why is opening the door and getting in meaningfully different? If I open the door and I throw the gun in, how is that? I mean, why do I have to get in the car to put the gun in? I don't understand that. The only way your honor can come to that conclusion is to disbelieve Ali Ali. Okay, so then you get back to that earlier. That is a contested fact. And we are not here on a sufficiency of the evidence argument after a trial. We're here on summary judgment, where the plaintiff gets every reasonable benefit of every fact in the case and also every reasonable inference. That's why interlocutory appeals are so unusual. The mistakes of fact do not defeat qualified immunity. But here's the thing, your honor. The mistake of fact that's been argued by the appellant in this case is predicated on a falsity. Seeing a gun. His mistake of fact. You just declared that you get to the jury because the officer with an objectively reasonable theory might be disbelieved. No, that is not correct. That's what you just said. I come back to what I was asking. What is the objectively reasonable evidence disputing Thompson's testimony that he saw a gun in Stokes's hands as he approached the Monte Carlo? There are. Don't tell me all the people that didn't see it. Tell me what's objectively reasonable. And don't tell me that Atlee said that the gun was in the car. You have to have evidence. Of course, unfortunately, Stokes is not alive. And Straub didn't see that, did he? He wasn't watching. Was he watching Stokes run toward the car? Or was he still around the corner of the building? I believe that Officer Straub saw Ryan Stokes coming toward him. Right. All right. So your testimony that you say is a lie was what Thompson saw before that. When he was running toward the car, not coming back from the car. And I don't, I didn't understand from the briefs what there is refuting Thompson other than saying, well, nobody else saw that. Well, I don't think that defeats qualified immunity. Here's what does defeat qualified immunity. When you have objectively reasonable evidence that it is impossible for Ryan Stokes to have had that gun based on Ali Atlee's testimony. It never left the car. The two were together all night long. He knows exactly where he keeps it. Ali Atlee works in a munitions plant. It's important for him to follow the rules. He had a makeshift holster for that gun, and he kept it legally in between the driver's seat and the console of his car, and it never left the car. That's his testimony. So for this court to now disbelieve Ali Atlee's testimony, your honor, that's the only way you can come to your conclusion that you're suggesting is what evidence do we have to show that Thompson didn't see the gun and you tell me not to mention Ali Atlee. Well, the contested evidence is Ali Atlee. The disputed evidence is Ali Atlee's testimony. That gun never left my car. So in order for you to say there's qualified immunity because no one can contest the fact that Thompson saw a gun, you're going to have to disregard Ali Atlee's testimony, and that's not proper on summary judgment. That's not proper in a qualified immunity analysis. I would agree with you that the district court's order in one respect is lacking. And that's on the clearly established prong. There are references- That's typically the only one we consider. I reread the Wallace v. City of Alexander district court order denying summary judgment, and it's literally a paragraph long, and in Wallace, this court affirmed the denial of summary judgment. In 2016, and Wallace v. City of Alexander amplified what Tennessee v. Garner has always said. You cannot shoot an unarmed man dead in the back. And so while I- Well, I think the Supreme Court has said you don't do that anymore. This is a de novo review. The Supreme Court said to the Ninth Circuit, you can't just cite Garner and cite Grain. They were not happy with- They didn't say there are a lot of facts, and so this should go to a jury. Well, they didn't say it should go to a jury. The Supreme Court actually reversed Casella outright, which I have my opinions about that. Wait a minute. They remanded for further proceedings. No, they granted qualified immunity because the law was not clearly established. The Supreme Court did their own de novo review and reversed that case outright. All right, but that doesn't make sense. It doesn't. I'm not sure that's right. I am sure, Your Honor. You can bank on it. I've read Casella, and Casella is about a woman that's brandishing a knife. Here, if you accept as true, which you must, that Ryan Stokes never had a gun that whole night. There was no threat, and particularly under Tennessee v. Garner, there was no significant and immediate threat if he had no gun. And for this court to say, we're just going to disregard Allie Outley's testimony altogether is not a proper qualified immunity analysis, and it certainly does not give the benefit of the inferences and does not shed the light most favorable on the facts in this case. What significance is there, if any? I talked to opposing counsel on the fact that the other officer said, I thought he looked like he was surrendering, and then also the other officer said, I didn't hear any warnings at all. Is there significance to that, or is this really about the gun in your view? Because that's the point you made from the very beginning. This is all about the dispute on the gun. Well, and here's why I made that point, and then I'll answer your question. Whether or not Ryan Stokes had a gun determines whether there was a significant and immediate threat. That's why the gun is so critically important. If there is no gun, there can never be qualified immunity in this case, because it's a Tennessee versus Garner. He's literally walking away from the shooting officer, not armed with anything, in an entertainment district where they've just shot pepper spray and everybody's running. He's walking towards Stroud. Correct. All right, well, don't misstate. You're telling us we're misstating facts all the time. You just misstated one. Your Honor, I'm not sure I know what I said that was mistaken, and I apologize. This was just like Garner. He was running away from the cops, and he wasn't. Stokes was going toward a pursuing police officer, not Thompson, Thompson's fellow officer, and he was within, what, 10 feet of him? Yes, correct, when he was shot. And now to your question. More confrontational than Garner. Yes, I believe you can say that it was more confrontational than Garner, but what we do have is an unarmed- That's not sufficiently for deadly force, but that's the- Your Honor, that's the whole point. He was unarmed. If you accept the facts in the light most favorable to the plaintiff, he was unarmed. The crime that he was accused of was a low-level property crime of stealing a cell phone. They were in an entertainment district where pepper spray had been sprayed into a crowd to do what? To disperse the crowd. When you shoot pepper spray into a crowd, that doesn't mean you're welcome here. But Thompson doesn't know that. He knows there's been a reported theft and flight. Correct. And he sees the fleeing, what appears to be a fleeing suspect. He sees a man going to his car when the bars had closed, something police officers see all the time. That's why Officer Straub, I believe- I thought he was running. He was jogging. And I said, Your Honor, I said he was going to his car. And that's exactly what he was doing. After the bars had closed down in an entertainment district. How does Thompson know that? He had to have at least- How does Thompson know that Monte Carlo is Stokes' good friend's automobile? We're talking about a deadly force case, Your Honor. I know we are. We're talking about a man's life being taken. But we've had deadly force cases where, in fact, someone reasonably perceived to be armed was not. In this case, there is no objectively reasonable evidence that he was mistaken if there is no gun. You cannot make that argument if there is no gun. Well, let's get off the gun and go back to the surrender and the commands point. Because I want to know how that plays in with and without the gun. So assuming, you know, he saw the gun, how does that play in to qualified immunity? Suppose there is no gun. How does it play in, if at all? All right. So from a number of different officers' perspectives, including Officer Jones, she said she heard one command, which was get on the ground. Officer Thompson, and you can listen in his deposition how loud it was, says he says between five and ten times, show me your hands and drop the gun. Those aren't commands that Officer Jones even heard. And it is reasonable to infer from that evidence that what she heard was get on the ground after the shots were fired, not before. Officer Straub, in his testimony, page 91, line 7 through 21, Officer Straub says, I never heard any commands. Officer Straub was only 20 to 25 feet away from Officer Thompson when these loudest command voice commands were given by him to Ryan Stokes. Officer Villafane, who is toward the south end, or more to the south of where Ryan Stokes is located, says, I never heard any commands. So the issue of commands is squarely disputed by the evidence. But what about surrender? So there's going to be a very different situation if one's saying he has his hands up versus having his hands at his waist and being a perception that he's surrendering. So what about the whole surrender point? I think that what you have to presume from the facts in the record is based upon what Officer Straub said, because he was in the best position to see. He believed that Ryan Stokes was about to surrender. About to surrender. So he didn't have his hands up. He didn't have his... Okay. This is where his hands were. So Thompson probably couldn't see that very well. I mean, he had his back to him. It's a contested fact, Your Honor. Well, is it contested? Because then we've got to look at what's reasonable from his point of view. One thing to have your hands up. It is absolutely contested whether or not he could see Ryan Stokes' hands 15 feet away with an officer in the backdrop. And Officer Thompson says, I could see Officer Straub's chest. If he can see Officer Straub's chest, it defies logic that he can't see the man in front of him holding his hands up. I see that I'm out of time if you have any other questions. One more question, Jim. One more time back to this fact, if it's a fact. At what point did Officer Thompson see the gun in the decedent's hand? The record evidence says never. What Officer Thompson says is he saw the gun in his right hand at waist level barreled down as he was rounding the corner of the Monte Carlo going to the door. Going to the door of what? Of the Monte Carlo. Whereupon, what's the decedent's name again? Mr. Stokes. Ryan Stokes. Then turned and advanced towards Officer Straub or away from Straub? No. This is the front of the Monte Carlo. Officer Thompson says that he saw the gun right here at the corner in Ryan Stokes' right hand, gun barreled down. He crouches at the door, the door opens and closes in a matter of one second, and then Ryan Stokes gets up and begins jogging back toward Officer Straub. The thing about that is, if you believe Ollie Outley's testimony that that gun never left his car, it is impossible for Thompson to have seen a gun at all at any time. If we believe Otley. Your Honor, respectfully, it is the record evidence. It is objectively reasonable. It was the gun at the place where Otley said he had left it? No, it was on the seat. And who put it there? That's a question for the jury, Your Honor, because the reasonable inference is there are two possibilities. Not one, two. I know they made a lot of hay about this in their brief, and I even heard Your Honor, Judge Loken, talk about conspiracy theories. It is a reasonable inference when a police officer, after he shoots and kills somebody, gets inside the car with his flashlight. That's the record evidence. That shooting officer got inside that red Monte Carlo with his flashlight against police policy. The police policy, which this court can consider, according to the recent cases, is standard operating procedures in police departments. And Officer Straub said there was no reason for Officer Thompson to get inside that car. So the two possibilities are to have it Mr. Thompson's way, Officer Thompson's way. Ryan Stokes put it there. But a reasonable inference is that Officer Thompson found the gun in Ollie Outley's hiding place and put it on the seat. That's a reasonable inference from the evidence. Almost like a scene out of a movie casino. Well, you know, when I was young and innocent, I didn't believe in conspiracy theories. But after I tried White v. McKinley, which is one of the cases we cite in this brief, I believe in conspiracy theories. They do happen. I'll give you two minutes for both. Thank you, Your Honor. There have been many misstatements of the factual record that the court will be able to assess when reviewing the transcript of Mr. McAllister's statements. I'll leave that be. We cite you cases, the Billingsley case from Omaha, in which a fleeing suspect was shot in the back, an unarmed fleeing suspect was shot in the back from a deck of a home. The suspect was in the backyard. He had no weapon. The officer never even claimed to have seen a weapon. The only issue in that case was the officer couldn't see his hand, and the victim began to rotate in a manner toward the officer, and the officer shot, qualified immunity upheld. The Thompson case, which actually Judge Wolman, you wrote, this was from Pine Lawn, Missouri, where the officer chased a robbery suspect down an alley. The suspect jumped over a wall, turned in an aggressive manner. The officer couldn't see his hands. He was shot in the back. He had no gun. In the Loke case, a drunken man was coming toward the officer. The officer was being told he had no weapons. He was raising his hands in surrender. He was shot. He was unarmed. Qualified immunity. The plaintiff is focusing on the gun because it's all they have, but the qualified immunity does not turn on whether the gun was in his hand or not because all of the other objective, the question is, was Officer Thompson's conduct objectively reasonable? Even without the gun in his hand, his conduct is consistent with Billingsley, Thompson, Loke, and many of the other cases we've cited. Second point, you never heard about clearly established. This was the plaintiff's opportunity to point to a case that established beyond debate that only a plainly incompetent officer would have shot in the situation that Officer Thompson faced. Not only did they not cite you to any such case, they didn't even attempt to distinguish the three cases I just cited, which are clearly factually analogous, which found qualified immunity. Let's suppose no gun. Yes. Is about to surrender. No warnings. Do we really need a case directly on point to say you can't shoot somebody in the back? There's, there are cases that we've cited that say just that. And your honor, it was Officer Straut on the surrender point. I know you're interested in this. If I might speak to it for a moment, I am out of time. Officer Straub and counsel just acknowledged, and he's right about this. Officer Thompson is over here. Officer Straub is here. Officer Straub says his hands were at his waist and beginning to raise. They were not up here. They were still at his waist, beginning to raise. Now, if you're Officer Thompson and you can't see this hand, which is undisputed, right? You see him re-engage with a pursuing officer, you see his right arm begin to raise. I suggest that it is objectively reasonable to be concerned that he has a weapon he's about to use with an officer that he's going to re-engage with, that he has been fleeing. Whether that gun was ever found in the car or not. This is Billingsley. This is Thompson. This is Loke and the many other cases we cite. That concludes. Yes, your honor. To what extent is Officer Thompson's credibility an issue in this case? You can disregard whether he saw the gun or not. So I think that his credibility should not be assessed on summary judgment. You disregard the fact that he did not see a gun. Well, because even if he didn't see a gun as Mr. Stokes ran in front of him, what happened next? The whole case almost resets at the car. He sees Mr. Stokes go into a vehicle, lean in. By the way, you can read Straub and Jones' testimony. They both testified he leaned into the car or crouched at the car. He sees this suspect who's fleeing go into a vehicle, come out. He cannot see his right hand. Under those circumstances, I think an objectively reasonable officer could be concerned that he retrieved a weapon from a concealed place and then began to re-engage with another officer. But he also testified that he saw a gun. That's right, and he did. But if you want to give the plaintiff every inference, going into a vehicle, returning, and re-engaging with an officer with the hands not seen is a much better qualified immunity case than some of the ones we've cited to you. Thank you, Your Honor. Thanks to the court.